UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

R. Alexander Acosta, Secretary of Labor,
United States Department of Labor,

                Petitioner,

v.

NORTH PROVIDENCE PRIMARY CARE
ASSOCIATES INC., NORTH PROVIDENCE
URGENT CARE, INC., CENTER OF NEW
ENGLAND PRIMARY CARE, INC.,
CENTER OF NEW ENGLAND URGENT
CARE, INC. AND ANTHONY FARINA, JR.

                Respondents.

Civil Action No.

May 9, 2017

MISC 17  19

## MEMORANDUM IN SUPPORT OF PETITION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA DUCES TECUM

Pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "Act" or "FLSA"), and in accordance with Rules 7(a) and 7(d)(1) of the Local Civil Rules of the United States District Court for the District of Rhode Island, the Petitioner Secretary of Labor, United States Department of Labor (the "Secretary") files a petition and this memorandum in support thereof to enforce an administrative subpoena duces tecum issued by the Regional Administrator of the Wage and Hour Division, United States Department of Labor, to Respondents.

The Secretary finds it necessary to seek the Court's intervention in this matter because the Respondents have refused to provide specific documents in response to a reasonable subpoena, or provide a written statement affirming that such documents do not exist. This subpoena seeks time records that had been saved by the Defendants' timekeeping system's data

base. Affidavit of Cheryl Barnes ¶ 16 (Exhibit C) ("Barnes Aff."). These documents are relevant to the Secretary's authorized investigation of the Respondents, and the Secretary's request for the documents has a lawfully authorized purpose. In addition, Respondents cannot show that this request is overly burdensome. The Secretary only seeks documents that are in the possession, custody, or control of the Respondents, or a written statement that these documents no longer exist. Accordingly, the Secretary's petition to enforce the subpoena at issue in this case should be granted.

## STATEMENT OF FACTS

In November 2016, the Wage and Hour Division began the investigation of Respondents that underlies this subpoena enforcement action. Barnes Aff. ¶ 4. Respondents operate walk-in urgent care and primary care medical offices out of two locations in North Providence and Coventry, RI. Barnes Aff. ¶ 4 Respondent Dr. Anthony Farina ("Farina") is the president of all of the corporations, and the Secretary has reason to believe that he formulates all company policy, writes the employee handbook, hires and fires employees, and establishes all pay rates and pay practices. Barnes Aff. ¶ 4. Investigators Cheryl Barnes ("Barnes") and Samuel Silviera ("Silviera") of the Providence, Rhode Island Office of the Wage and Hour Division was assigned to investigate the Respondents. Barnes Aff. ¶ 4; Affidavit of Samuel Silviera ¶ 4 (Exhibit E) ("Silveira Aff.").

During the course of the investigation Barnes and Assistant District Director Epifano ("Epifano") requested a number of documents from the Respondents, including names, addresses, and telephone numbers of all business owners and company officers, existing company organizational charts, the legal name of the company and all other names used by the company, the gross annual dollar volume of sales for the past three years, a list of all employees

employed in the past two years with their address, hourly rate or salary, descriptive job title, shift, and whether the Respondents consider any employee exempt from overtime, payroll and time records for the past two years, including a copy of the most recently completed payroll, birth dates for all employees under age 18 who worked during the past 24 months, 1099 Forms and contract documents with any independent contractors, day laborers, or subcontractors at this establishment, Federal Employer Identification Number (FEIN), all daily/weekly punch detail for the last 2 years to date, any edit punch reports showing changes made to the punch detail in the last 2 years to date, cash disbursement records (general ledger) for 2015 and 2016, name and contact information for any temporary agencies used, and the list of insurances accepted. Barnes Aff. ¶¶ 5 - 7; Affidavit of Don Epifano ¶ 5 (Exhibit D) (" Epifano Aff.").

After a number of attempts by Barnes during the period between November 22, 2016 and January 5, 2017, to obtain the requested documents, the Respondents, through their attorney, Michael Lepizzera, Esq. ("Lepizzera") made an incomplete production, and was not responsive to the efforts of Barnes to obtain the remainder of the missing documents that had been requested. Barnes Aff. ¶ ¶ 5-10. Included in those missing documents were all of the time cards for the time period between January 1, 2013 and December 31, 2016, labelled "Time Card Detail" for Respondents North Providence Primary Care Associates, Inc. and North Providence Urgent Care, Inc., and a number of the same type of time cards for the same time period, for employees who were found on earning records provided for Respondents Center of New England Primary Care, Inc. and Center of New England Urgent Care, Inc. Barnes Aff. ¶ 9.

Barnes then drafted the subpoena duces tecum at issue here, which was reviewed by Mark H. Watson, Jr., Regional Administrator of the Wage and Hour Division ("Watson"). Barnes Aff. ¶ 11 ; Affidavit of David Gerrain Aff. ¶¶ 6 - 9; Affidavit of Mark H. Watson, Jr. ¶¶

3

2 -5 (Exhibit A) ("Watson Aff."). Watson issued the administrative subpoena duces tecum on January 10, 2017, as authorized by Section 9 of the Act, 29 U.S.C. § 209, and the Secretary's Order 5-2010 § 5(B)–(C), Delegation of Authorities and Assignment of Responsibilities, 75 Fed. Reg. 55352-03, 55354 (Sept. 10, 2010); Watson Aff. ¶¶ 2 and 5[1]. The subpoena was served by Wage and Hour Division personnel on January 12, 2017 on Lepizzera, who accepted service for his client. Barnes Aff. ¶ 12; Silveira Aff. ¶ 7; Epifano Aff. ¶ 7.

Pursuant to the terms of the subpoena, Respondents were required to appear at the Providence, RI Area office of the Wage and Hour Division at 10 a.m. on January 30, 2017, and produce at that time all documents listed and described in that subpoena. See Watson Aff. ¶ 5 (referring to the subpoena, which is Exhibit 1 to the Affidavit of Mark H. Watson, Jr.).

Between January 30, 2017 and the present, numerous attempts were made by Wage and Hour personnel and Attorney Susan G. Salzberg of the Solicitor's Office in Boston ("Salzberg") to obtain the missing requested documents. Barnes Aff. ¶¶ 13- 18; Epifano Aff. . ¶¶ 8 - 9; Affidavit of Susan G. Salzberg, Esq. Salzberg Aff. . ¶¶ 3 - 16. While a number of the missing documents were provided on April 7, 2017, specific documents were still missing; namely, the same missing time cards labelled "Time Card Detail" for the period January 1, 2013 through December 31, 2016, as described above. Salzberg Aff. . ¶ 13; Barnes Aff ¶¶ 9, 15 -18. In an email forwarded to Lepizzera on April 14, 2017, Barnes described that while she had received from the Respondents, in December, time cards labelled "Time Card New", which had hours and minutes that always ended in .00 or 15 minute increments, she had also received from the Respondents in December documents labelled "Time Card Detail", which showed hours and minutes that fluctuated. Salzberg Aff. . ¶ 13; Barnes Aff ¶¶ 9, 15 -18. In that same email,

---

[1] The subpoena duces tecum at issue here is Exhibit 1 to the Affidavit of Mark H. Watson, Jr., which is Exhibit A to the instant petition.

Barnes described a phone call she had made on April 11, 2017 with a Tech Support representative of the manufacturer of the timekeeping system used by the Respondents. Salzberg Aff. . ¶ 13; Barnes Aff ¶ 16-18. In that conversation, Barnes was told by the representative that original punch data is saved in the timekeeping system's database and would be accessible unless it had been purged or deleted by the client. Salzberg Aff. . ¶ 13; Barnes Aff ¶¶ 16 -18. On April 14, 2017, Salzberg forwarded Barnes's email to Lepizzera, requesting him to provide those "Time Card Details" or specifically state in writing that they no longer exist, and setting a deadline of April 19, 2017 for their production. Salzberg Aff. ¶ 13.

On April 14, 2017, Salzberg received an email from Lepizzera stating that he understood the request, would be forwarding the entire email chain to his client that day, and would follow up with any necessary explanations to help the client fully respond to the Department's request. He thanked Salzberg for the additional explanation and time and stated he would be following up with the Department next week as requested. Salzberg Aff. . ¶ 14.

On Wednesday, April 19, 2017, Salzberg sent an email to Lepizzera, stating nothing had been produced and Wage and Hour had not heard from him. Lepizzera did not respond. Salzberg Aff. ¶ 15. Salzberg sent another email that day, stating that she was aware that Lepizzera had until 4:00 pm that day, and apologizing for sending the email before that deadline. Salzberg Aff. ¶ 15. On Thursday April 20, 2017 Salzberg was informed by Wage and Hour that they had heard nothing from Lepizzera. On that date Salzberg sent an email to Lepizzera at 9:56 am stating, "Wage and Hour has received nothing from you or your client or heard from you or your client. Please advise." Salzberg heard no response from Lepizzera. Salzberg Aff. ¶ 15. On April 20, 2017, at 5:50pm Salzberg sent an email to Lepizzera stating, "Having not heard from you, or received the requested documents by the Wednesday close of business deadline, please put your

client on notice that by tomorrow, Friday April 21 at 4:00 pm, if we have not received either the "Time Card Detail" (not "Time Card New") for the period January 1, 2013 through December 31, 2016 for each of the 4 companies, or a written statement from you that such documents no longer exist, we will be proceeding with the subpoena enforcement action." Salzberg Aff. ¶ 15. To date, Lepizzera has not responded. Salzberg Aff. . ¶ 15.

As of this date, the missing time cards labelled "Time Card Detail" for the period January 1, 2013 through December 31, 2016, as described above, have still not been produced, nor has Wage and Hour received a written statement affirming that the missing documents do not exist. Salzberg Aff. . ¶ 16.

ARGUMENT

I.     Legal Framework and Standards

Section 9 of the FLSA, 29 U.S.C. § 209, "empowers the Secretary of Labor to subpoena witnesses and documentary evidence relating to any matter under investigation." Donovan v. Lone Steer, Inc., 464 U.S. 408, 410 (1984).[2] Such subpoenas are enforceable in the district courts of the United States.[3]

"The requirements for enforcement of an administrative subpoena are not onerous." United States v. Sturm, Ruger & Co., 84 F.3d 1, 4 (1st Cir. 1996). For an administrative

---

[2] Section 9 of the Act provides:

> For the purpose of any hearing or investigation provided for in this chapter [8 of the FLSA], the provisions of sections 49 and 50 of Title 15 (relating to the attendance of witnesses and the production of books, papers, and documents), are made applicable to the jurisdiction, powers, and duties of the Administrator, the Secretary of Labor, and the industry committees.

29 U.S.C. § 209. Section 49 of Title 15 of the United States Code provides, in pertinent part, that:

> the [Federal Trade] Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.

[3] Section 49 of Title 15 of the United States Code goes on to provide that:

> [I]n case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

> Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation issue an order requiring such person, partnership, or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

7

subpoena to be enforced, "it is sufficient if the inquiry is [(1)] within the authority of the agency, [(2)] the demand is not too indefinite and [(3)] the information sought is reasonably relevant." United States v. Morton Salt Co., 338 U.S. 632, 652 (1950). Relying on the Supreme Court's decision in Morton Salt, the United States Court of Appeals for the First Circuit has articulated these requirements for the enforcement of a subpoena in a slightly different manner: "In order to obtain judicial backing the agency must prove that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena." Sturm, Ruger & Co., 84 F.3d at 4.

"[T]he affidavits of government officials have been accepted as sufficient to make out a prima facie showing that these requirements are satisfied." United States v. Comley, 890 F.2d 539, 541 (1st Cir. 1989); accord In re McVane, 44 F.3d 1127, 1136 (2d Cir. 1995).

II.     **The Secretary's Subpoena is Issued for a Congressionally Authorized Purpose, the Information Sought is Relevant to the Authorized Purpose, Adequately Described, and Proper Procedures Have been Employed In Issuing the Subpoena; the Subpoena Should be Enforced**

The Secretary's subpoena in this case satisfies the Morton Salt standard and, therefore, this Court should enforce the subpoena. First, the Secretary issued the subpoena in this case for a lawfully authorized purpose. In Section 11(a) of the FLSA, 29 U.S.C. § 211(a), Congress granted the Administrator of the Wage and Hour Division and his designees the authority "to investigate and gather data regarding wages, hours, and other conditions of employment to determine whether an employer is violating the Act." Lone Steer, Inc., 464 U.S. at 409.[4] The Secretary as

---

[4] Section 11(a) of the FLSA provides, in pertinent part, that:

8

part of the subpoena requested:

> **"For the period January 1, 2013 through December 31. 2016, all pay records, timecards,** or related documents which reflect names, addresses, telephone numbers, deductions from wages, rates paid, job titles, hire and termination dates, start and stop times, daily and weekly hours worked for all persons, both on and off the payroll records, whether classified as an employee, regular employee, 3rd party employed individual, or independent contractor, currently or formerly employed by, or suffered or permitted to work for, the above named firms. This includes but is not limited to, time records, **timecards, Time Card Detail,** Time Card New, sign in sheets, schedules, logs, invoices, pay records, 1099s and any other system used to record hours worked and amounts paid to workers." (emphasis added).

Exhibit 1 to Watson Aff.

These requested documents were part of the Secretary's investigation into the payment of wages for workers of the Respondents. The Respondents had made an incomplete production of documents in response to the subpoena on or about December 15, 2016, which included a number of time cards which were labelled "Time Card New". Barnes Aff. ¶ 9. These cards labelled "Time Card New" had hours and minutes that always ended in "00" or 15 minute increments. Barnes Aff. ¶ 9. In addition, during the same time period, the Respondents also produced for two of the Respondent companies, a number of time cards which were labelled "Time Card Detail", which showed hours and minutes that fluctuated. Barnes Aff. ¶ 9. None of those cards were produced for two of the Respondent companies and many of such time cards were missing for the other two Respondent companies. Barnes Aff. ¶ 9.

In the subpoena, the Secretary specifically asked, as part of the request, that the

---

The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter [8 of the FLSA], and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter.

29 U.S.C. § 211(a).

Respondents produce documents labelled "Time Card Detail" for the period January 1, 2013 through December 31, 2016. See Subpoena labelled Exhibit 1 to Watson Aff.

While on April 7, 2017, the Respondents supplemented their original response, they still did not include the missing time cards labelled "Time Card Detail" for the period January 1, 2013 through December 31, 2016. Barnes Aff. ¶ 15. On April 11, 2017, Barnes called the Tech Support at the Headquarters of Amano Cincinnati, the manufacturer of the Time Keeping System of the Respondents, called "Time Guardian". Barnes Aff. ¶ 16. On that date, Barnes spoke with Nick Huddy of Amano Tech Support. Barnes Aff. ¶ 16. Mr. Huddy stated to Barnes that the original punch data (or "Time Card Detail") is saved in the Time Guardian database back to the date the system was installed by the client and would be accessible unless it has been purged or deleted by the client. Barnes Aff. ¶ 16. The production of the "Time Card Detail" for the period January 1, 2013 through December 31, 2016, was specifically requested again by the Secretary on April 14, 2017 for each of the of the four companies, or alternatively the Secretary asked the Respondents to specifically state in writing that these documents do not exist. Salzberg Aff ¶ 13. Despite a number of attempts by Salzberg to convince Respondents to either produce the documents or provide a written response stating they do not exist, as of this date the Respondents have not done so. Salzberg Aff ¶¶ 13-16. These documents, which were part of the original subpoena request, are certainly relevant to the authorized purpose of investigating the pay practices of the Respondent. The request adequately specifies the documents the Secretary seeks, specifies a particular time period and is specific as to what is requested.

Finally, proper procedures were followed in issuing this subpoena. Barnes drafted the subpoena duces tecum at issue here, which was reviewed by Watson. Barnes Aff. ¶ 11; Gerrain Aff. ¶¶ 5 - 9; Watson Aff ¶¶ 2-5. Watson reviewed the information requested, determined that

the request was within the authority of the agency, and was specific and reasonably relevant to the authorized inquiry of the investigation. Watson Aff ¶ 4. Watson issued the administrative subpoena duces tecum on January 10, 2017, Watson Aff. ¶ 5, as authorized by Section 9 of the Act, 29 U.S.C. § 209, and the Secretary's Order 5-2010 § 5(B)–(C), Delegation of Authorities and Assignment of Responsibilities, 75 Fed. Reg. 55352-03, 55354 (Sept. 10, 2010).[5] The subpoena was served by Wage and Hour Division personnel on January 12, 2017 upon Lepizzera, who accepted service for his clients. Barnes Aff. ¶ 12; Silveira Aff. ¶ 7.

As set out by the First Circuit, the subpoena in this case was "issued for a congressionally authorized purpose," the documents sought in the subpoena -- and not produced, namely time cards -- are clearly "relevant to the authorized purpose," "adequately described," and "proper procedures have been employed in issuing the subpoena." Sturm, Ruger & Co., 84 F.3d at 4. Therefore, the Respondents should be required by this court to produce those specific time cards that have thus far been withheld, or state in writing that they no longer exist.

## CONCLUSION

In view of the foregoing, the Secretary prays that this Court issue an order requiring the Respondents to produce the subpoenaed documents at such time and place as the Court may set, or issue a written statement that such documents do not exist. The order should also require Respndents to show cause, if any they have, why they should not comply with the Secretary's subpoena in each and every requirement thereof.The Secretary also requests such other and further relief as may be necessary and appropriate.

Post Office Address:                           Nicolas Geale
                                               Acting Solicitor of Labor

---

[5] The subpoena duces tecum at issue here is Exhibit 1 to the Affidavit of Mark H. Watson, Jr., which is Exhibit A to the instant petition.

11

| | |
|---|---|
| U.S. Department of Labor<br>Office of the Solicitor<br>JFK Federal Building<br>Room E-375<br>Boston, MA  02203<br>TEL: (617) 565-2500<br>FAX: (617) 565-2142<br><br>Date:   May  , 2017 | Michael D. Felsen<br>Regional Solicitor<br><br>_/s/ Susan G. Salzberg_<br>Susan G. Salzberg<br>Senior Trial Attorney<br>salzberg.susan@dol.gov<br>MA BBO No. 556437<br><br>U.S. Department of Labor<br>Attorneys for Petitioner |